UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| WELLNESS EATERY LA JOLLA LLC, WELLNESS EATERY LITTLE ITALY LLC, and WELNESS EATERY CARMEL VALLEY LLC,<br><br>Plaintiffs,<br><br>v.<br><br>THE HANOVER INSURANCE GROUP, CALIFORNIA CAPITAL INSURANCE CO., and DOES 1 through 10, Inclusive,<br>Defendants. | Case No.: 20cv1277-AJB-RBB<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT OR PARTIAL JUDGMENT ON THE PLEADINGS**<br><br>(Doc. No. 8) |
|---|---|

This civil action concerns Wellness Eatery La Jolla LLC, Wellness Eatery Little Italy LLC, and Wellness Eatery Carmel Valley LLC's (collectively, "Plaintiffs" or "Wellness Eatery") claims of insurance coverage against The Hanover American Insurance Company[1] ("Defendant" or "Hanover"). Plaintiffs' suit comes in the wake of the COVID-19 public health crisis, and government emergency orders relating thereto. It is not

---

[1] Plaintiffs do not contest Defendant's assertion that Plaintiffs erroneously sued it as The Hanover Insurance Group. (Doc. No. 8-1 at 1, 30.)

1

the first of its kind. The pandemic has severely affected small businesses across the United States, and COVID-19 insurance cases have been, and continue to be, litigated across the nation. Presently before this Court is Defendant's motion for judgment or partial judgment on the pleadings. (Doc. No. 8.) Plaintiffs filed an opposition, to which Defendant replied. (Doc. Nos. 13, 14.) Upon careful consideration of the insurance policy and applicable case law, as more fully set forth below, the Court **GRANTS** Defendant's motion.

## I. BACKGROUND

Plaintiffs operate Parakeet Café, a restaurant "serving up health-conscious food, coffee, tea, and freshly baked goods" in three different locations in San Diego. (Doc. No. 1-2 at ¶¶ 1, 21–23.) According to the complaint, Wellness Eatery and Hanover entered into an insurance contract with a policy period of June 20, 2019, through June 20, 2020 ("Policy").[2] (*Id.* at ¶ 16.)

On March 4, 2020, California Governor Gavin Newsom declared a State of Emergency in California due to the threat of COVID-19, "a deadly infectious disease caused by the recently discovered Coronavirus known as SARS-CoV-2." (Doc. No. 1-2 at ¶ 36, 40.) On March 16, 2020, California Department of Public Health issued guidance to restaurants, stating "Restaurants should be closed for in-restaurant seated dining, and should be open only to drive-through or other pick-up/delivery options." (*Id.* at ¶ 43.) The guidance permitted restaurants to serve food and beverages for off-premises consumption, but "mandated that they ensure they have an environment where patrons purchasing food or beverages 'maintain adequate social distancing.'" (*Id.*) Three days later, on March 19,

---

[2] Defendant attached a copy of the Policy in its motion to dismiss. (Doc. No. 8-3 at Exhibit A.) As Plaintiffs' complaint refers extensively to the Policy, and because the Policy forms the basis of their insurance coverage claims, the Court may consider its contents under the incorporation by reference doctrine. *Biltmore Assocs., LLC v. Twin City Fire Ins. Co.*, 572 F.3d 663, 665 n.1 (9th Cir. 2009) ("A court may consider documents, such as the insurance policies, that are incorporated by reference into the complaint.").

2020, Governor Newsom issued Executive Order N-33-20, directing "all residents of the state to stay home except as needed to maintain infrastructure sectors[.]" (*Id.* at ¶ 8.)

Plaintiffs claim that on March 16, as a result of the "Closure Orders," Parakeet Café "was forced to close its doors to the public," and suffered and continues to suffer "extraordinary losses of business income and lost wages for their full-time employees." (*Id.* at ¶ 47–50.) According to Plaintiffs, their losses amount to covered losses under the business income, extra expense, extended business income, and civil authority provisions of their Policy. (*Id.* at ¶ 51–69.) The Policy states, in pertinent part,

> **1. Business Income**
>
> . . .
>
> We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be **caused by direct physical loss of or damage to property at premises** which are described in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss.
>
> . . .
>
> **2. Extra Expense**
>
> Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no **direct physical loss or damage to property** caused by or resulting from a Covered Cause of Loss.
>
> . . .
>
> **5. Additional Coverages**
>
> a. Civil Authority
>
> We will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises **due to direct physical loss of or damage to property, other than at the described premises**, caused by or resulting from any Covered Cause of Loss.
>
> . . .
>
> c. Extended Business Income
>
> (1) Business Income Other Than "Rental Value"

> If the necessary "suspension" of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:
>    (a) Begins on the date property (except "finished stock") is actually repaired, rebuilt or replaced and "operations" are resumed; and
>    (b) Ends on the earlier of:
>       (i) The date you could restore your "operations", with reasonable speed, to the level which would generate the business income amount that would have existed if **no direct physical loss or damage had occurred**[.]

(Doc. No. 8-3 at 48, 49 (emphasis added).)[3]

Plaintiffs filed an insurance claim with Hanover, which it denied. (*Id.* at 50.) Plaintiffs thereafter commenced this litigation, raising nine causes of action: (1) breach of contract, (2) breach of covenant of good faith and fair dealing, (3) bad faith denial of insurance claim, (4) unfair business practices under California Business and Professions Code section 17200 *et seq.*, ("UCL") (5) fraudulent misrepresentation, (6) constructive fraud, (7) unjust enrichment, (8) declaratory relief under California Code of Civil Procedure § 1060, *et seq.*, and (9) injunctive relief under California's UCL. Defendant's motion for judgment or partial judgment on the pleadings followed.

## II.   LEGAL STANDARD

"After the pleadings are closed—early enough not to delay trial—a party may move for judgment on the pleadings." Fed. Civ. Pro. R. 12(c). "A district court will render a 'judgment on the pleadings when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law.'" *Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co. Ltd.*, 132 F.3d 526, 529 (9th Cir. 1997) (quoting *George v. Pacific – CSC Work Furlough*, 91 F.3d 1227, 1229 (9th Cir. 1996)). "In considering a motion for judgment on the pleadings,

---

[3] The pinpoint page citations refer to the page numbers that appear at the top of each ECF filing.

1  a court must accept as true all material allegations in the complaint and must construe those
2  allegations in the light most favorable to the plaintiff." *United States v. In re Seizure of One*
3  *Blue Nissan Skyline Auto., & One Red Nissan Skyline*, 683 F. Supp. 2d 1087, 1089 (C.D.
4  Cal. 2010) (citing *Pillsbury, Madison & Sutro v. Lerner*, 31 F.3d 924, 928 (9th Cir. 1994)).
5  Judgment on the pleadings is appropriate when, accepting as true all material allegations
6  in the nonmoving party's pleadings, the moving party is entitled to judgment as a matter
7  of law. *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th
8  Cir. 1989).

### III.  DISCUSSION

In this case, Defendant primarily argues that Plaintiffs failed to allege a "direct physical loss of or damage to" property as required to trigger coverage under the business income, extra expense, extended business income, and civil authority provisions of the Policy.[4] (Doc. Nos. 8-1 at 8–15; 14 at 5–9.) The Court discusses each in turn.

### A. California Law

To begin, the parties do not dispute that California law governs. *See, e.g.*, *Intri-Plex Techs., Inc. v. Crest Group, Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007) ("Since this is a diversity action the law of the forum state, California, applies."). Under California law, the

---

[4] Defendant also requests the Court to take judicial notice of certain documents. (Doc. Nos. 8-4; 14-1). Federal Rule of Evidence 201 states that a "court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Here, Defendant requests judicial notice of Exhibits A through H of its motion to dismiss, as well as Exhibits A through N of its reply—which altogether consists of the certified copy of the Policy, court hearing transcripts, pleadings, and decisions in related federal and state cases, and the government health orders and guidance referenced in Plaintiffs' complaint. (Doc. Nos. 8-3 at 2–6; 14-1 at 2–3.) Upon review of the documents, the Court finds that its contents are either generally known or can be accurately and readily determined from credible sources. There is no dispute as to the Policy's authenticity, and court records and government publications "are matters of undisputed public record" of which the Court can take judicial notice. *Quan v. Smithkline Beecham Corp.*, 149 F. App'x 668, 689 (9th Cir. 2005) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). Plaintiffs do not contend otherwise. Accordingly, the Court grants Defendant's request for judicial notice.

"interpretation of an insurance policy is a question of law" to be answered by the court. *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18 (1995), *as modified on denial of reh'g* (Oct. 26, 1995). The "goal in construing insurance contracts, as with contracts generally, is to give effect to the parties' mutual intentions." *Minkler v. Safeco Inc. Co.*, 49 Cal. 4th 315, 321 (2010) (quoting *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1264 (1992)). To do so, the court must "look first to the language of the contract in order to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it." *Waller*, 11 Cal. 4th at 18; *see also Cont'l Cas. Co. v. City of Richmond*, 763 F.2d 1076, 1080 (9th Cir. 1985) ("The best evidence of the intent of the parties is the policy language."). Generally, if the policy terms are clear and explicit, their ordinary and popular interpretation governs. *Minkler*, 49 Cal. 4th at 321. But if the terms are ambiguous or susceptible to more than one reasonable interpretation, courts "interpret them to protect the objectively reasonable expectations of the insured." *Id.* However, "[c]ourts will not strain to create an ambiguity where none exists." *Waller*, 11 Cal. 4th at 18–19.

### B. Business Income, Extra Expense, and Extended Business Income Provisions

To trigger insurance coverage under the business income, extra expense, and extended business income provisions of the Policy, there must be "direct physical loss of or damage to property at premises which are described in the Declarations." (Doc. No. 8-3 at 48, 49.) Plaintiffs' arguments focus on the "direct physical loss of" property prong of the provision. While the Policy does not define the terms "physical" or "loss", "[t]he fact that a term is not defined in the policies does not make it ambiguous." *Foster-Gardner, Inc. v. Nat'l Union Fire Ins. Co.*, 18 Cal. 4th 857, 868 (1998). The terms of a contract "must be construed in the context of that instrument as a whole, and in the circumstances of that case, and cannot be found to be ambiguous in the abstract." *Id.* (citation omitted).

In Plaintiffs' view, "direct physical loss of" property occurs when the premises are rendered unusable for their intended purposes—here, on-site dining, regardless of whether

there was any alteration to the physical appearance of the property.[5] (*Id.* at 19.) On the other hand, Defendant maintains that under California law, direct physical loss requires a tangible, physical alteration of the property. (Doc. No. 14 at 5–6.) Indeed, in *MRI Healthcare*, a California Court of Appeal stated:

> **A direct physical loss** "contemplates an actual change in insured property then in a satisfactory state, occasioned by accident or other fortuitous event directly upon the property causing it to become unsatisfactory for future use or requiring that repairs be made to make it so." . . . The word "direct" used in conjunction with the word "physical" indicates the change in the insured property must occur by the action of the fortuitous event triggering coverage. In this sense, "direct" means "without intervening persons, conditions, or agencies; immediate." . . . **For loss to be covered, there must be a "distinct, demonstrable, physical alteration" of the property**.

*MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*, 187 Cal. App. 4th 766, 779 (2010) (citations and alterations omitted) (emphasis added).

Plaintiffs attempt to distinguish *MRI Healthcare* by pointing out that the language interpreted in that case was the sole phrase, "direct physical loss to" property—as opposed to the disjunctive phrase, "direct physical loss of or damage to" property, in this case. (Doc. No. 13 at 17.) The Court is not persuaded that the difference is meaningful here. The California cases cited by Plaintiffs do not support any clear distinction between the terms "loss" and "damage."[6] As a district court recently noted in a COVID-19 insurance case

---

[5] In support, Plaintiffs cite *Hughes v. Potomac Ins. Co.*, but this case is not sufficiently analogous and does not stand for the proposition that physical loss does not require a tangible alteration of the property. (Doc. No. 13 at 19.) Unlike here, there was clear physical damage to property in *Hughes*, and the court considered whether the plaintiff's "policy should and can be interpreted in such a manner as to cover the damage to respondents' 'dwelling building' as a result of the landslide." *Hughes v. Potomac Ins. Co.*, 199 Cal. App. 2d 239, 249 (1962). As the court noted: "It goes without question that respondents' dwelling building suffered real and severe damage when the soil beneath it slid away and left it overhanging a 30-foot cliff." *Id.* (internal quotations omitted).

[6] Plaintiffs also rely on various out-of-state cases. However, as a federal court sitting in California, this Court is bound to follow the law and precedent as established by California courts in interpreting

7

involving identical policy provisions and arguments, "[t]he weight of California law []
appears to require some tangible alteration, no matter whether the trigger language uses
'loss' or 'damage.'" *Plan Check Downtown III, LLC v. AmGuard Ins. Co*, --- F. Supp.
3d ---, 2020 WL 5742712, at *5.

For instance, in *Simon Mktg., Inc. v. Gulf Ins. Co.*, a California court noted that under
the policy in that case (which is similar to the one here), "[t]here must be loss of, or damage
to, insured property" and "'detrimental economic impact unaccompanied by a distinct,
demonstrable, physical alteration of the property is not compensable' under a contract of
property insurance." 149 Cal. App. 4th 616, 623 (2007) (citation omitted). According to
the *Simon* court:

> [t]he requirement that the loss be "physical," given the ordinary definition of
> that term is widely held to exclude alleged losses that are intangible or
> incorporeal, and, thereby, to preclude any claim against the property insurer
> where the insured merely suffers a detrimental economic impact
> unaccompanied by a distinct, demonstrable, physical alteration of the
> property. (10A Couch on Insurance [(3d ed. 2005)] § 148:46, p. 148–81, fns.
> omitted.)

*Id. See also MRI Healthcare*, 187 Cal. App. 4th at 779 (same).

As another example, in *Ward Gen. Ins. Servs., Inc. v. Employers Fire Ins. Co.*, a
California Court of Appeal considered the exact phrase at issue here, "direct physical loss
of or damage to" property, in the context of a plaintiff who lost information stored in a
computer database. 114 Cal. App. 4th 548, 553–54 (2003). The *Ward* court found that the
words "direct physical" modifies both "loss of" and "damage to." *Id.* at 554. And after
examining the ordinary and popular sense of the word "physical," the court held, "we say
with confidence that the loss of plaintiff's database [information] does not qualify as a

---

California law for this dispute. While the parties are welcome to reference other state court's opinions as
persuasive guidance, where there are California cases on point, the Court considers those authoritative.

'direct physical loss,' unless the database has a material existence, formed out of tangible matter, and is perceptible to the sense of touch." *Id.* at 556.

Here, Plaintiffs claim that "the inability to use property because it has become unsafe due to some physical condition outside the policyholder's control is the exact type of 'direct physical loss of' or 'direct physical damage to' property the insurance policy here was intended to address." (Doc. No. 13 at 7.) The Court disagrees. Like in *Ward*, the Court finds that Plaintiffs' loss of its on-site dining use, "with its consequent economic loss, but with no loss of or damage to tangible property, [is] not a 'direct physical loss of or damage to' covered property under the terms of the subject insurance policy, and, therefore, the loss is not covered." *Id.* at 556–57. Simply put, Plaintiffs "cannot recover by attempting to artfully plead temporary impairment to economically valuable use of property as physical loss or damage." *10E, LLC v. Travelers Indem. Co. of Connecticut*, 2020 WL 5359653, at *4 (C.D. Cal. Sept. 2, 2020).

Plaintiffs also argue that adopting Defendant's interpretation would render the terms "loss of" property and "damage to" property redundant. (*Id.* at 18.) *See also Shell Oil Co. v. Winterthur Swiss Ins. Co.*, 12 Cal. App. 4th 715, 753 (1993) ("The way we define words should not produce redundancy, but instead should give each word significance."). While Plaintiffs' position finds some support in the ordinary rules of contract interpretation, the Court does not find that the slight redundancy in this particular context to be fatal. "The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." Cal. Civ. Code § 1641.

Here, the business income, extra expense, and extended business income provisions contain terms such as "period of restoration" and "repaired, rebuilt, or replaced" (Doc. No. 8-3 at 48, 49)—the ordinary and popular definitions of which strongly indicate that the "physical loss" contemplated by the Policy requires, as the aforementioned California cases state, some distinct, demonstrable, physical alteration of the property. *See*

Merriam-Webster's Online Dictionary (2021) (defining (1) restoration as "a bringing back to a former position or condition" or "a restoring to an unimpaired or improved condition"; (2) repair as "to restore by replacing a part or putting together what is torn or broken" or "to restore to a sound or healthy state"; (3) rebuilt as "to make extensive repairs" or "to restore to a previous state"; and (4) repair as "to restore to a former place or position" or "to take the place of especially as a substitute or successor".) Interpreting the Policy in context and with the assistance of surrounding terms, the Court finds that without some tangible physical alteration to the property, there would be no need to restore, repairs, rebuild, or replace. *See Palmer v. Truck Ins. Exch.*, 21 Cal. 4th 1109, 1115 (1999) ("When interpreting a policy provision, we must give its terms their ordinary and popular sense . . . . We must also interpret these terms in context . . . and give effect to every part of the policy with each clause helping to interpret the other.") (citation omitted); *Waller*, 11 Cal. 4th at 18 (same).

Moreover, as the district court in *Plan Check* found, Plaintiffs' interpretation "is not a reasonable one because it would be a sweeping expansion of insurance coverage without any manageable bounds." --- F. Supp. 3d ---, 2020 WL 5742712, at *6.

> For example, consider the following scenarios: (1) a city changes its maximum occupancy codes to lower the caps, meaning that a particular restaurant can no longer seat as many customers as it used to; (2) a city amends an ordinance requiring restaurants located in residential zones to cease operations between 1:00 a.m. and 5:30 a.m. to expand the window to 12:00 a.m. to 6:00 a.m.; (3) a city issues a mandatory evacuation order to all of its residents due to nearby wildfires (a consequence of this is that all businesses must suspend operations), but lifts the order three weeks later when the wildfires are extinguished without, fortunately, any destruction of property. Under [the plaintiff's] standard, all of these instances would trigger insurance coverage. While [the plaintiff] may believe that that is an appropriate result, the Court is not persuaded.
>
> The manageability issue is not limited to government action, but with anything that interferes with the permitted physical activities on a property. If

a building's elevator system had a software bug that temporarily shut down all the elevators, that would clearly interfere with permitted physical activities. Similarly, a snowstorm would interfere with a restaurant's outdoor dining service. And yet [the plaintiff's] interpretation would cover all of these scenarios. **It offers no way, and the Court does not see any way, to limit this coverage.** Though parties could in theory contract away coverage, **this is not practicable for all-risk policies** where everything is covered unless expressly excluded. The list of losses that do not fit within the parties' expectations of what property insurance should cover would be a very, very long one.

*Id.* (emphasis added). Thus, for the foregoing reasons, the Court finds that the resulting redundancy is not fatal here. *See Flintkote Co. v. General Acc. Assur. Co.*, 410 F. Supp. 2d 875, 890 (N.D. Cal. 2006) (noting that "[t]he fact that some redundancy results is not fatal" where the "the court has adopted the only reasonable construction of the contract").

In another attempt to claim a physical loss or damage, Plaintiffs allege that COVID-19 droplets have physically spread and proliferated "onto virtually every surface and object in, on, and around Wellness Eatery and its surrounding environs." (Doc. No. 1-2 at ¶19.) However, Plaintiffs do not plausibly allege that that their business income losses were due to the presence of COVID-19 on their property.[7] Rather, Plaintiffs' business income losses were due to the government Closure Orders prohibiting on-site dining. (Doc. No. 1-2 at ¶ 1 ("Parakeet Cafe was forced to close its doors to the public because of a series of orders issued by the City and County of San Diego.").

The Court acknowledges that Plaintiffs allege that the Closure Orders "were issued due to droplets containing the Coronavirus being on surfaces and objects in, on, around

---

[7] For this same reason, Plaintiffs' reliance on *Studio 417, Inc. v. Cincinnati Ins. Co.*, --- F. Supp. 3d ---, 2020 WL 4692385, at *6 (W.D. Mo. Aug. 12, 2020), which held that the plaintiffs adequately alleged a direct physical loss when they stated that "COVID-19 particles attached to and damaged their property, which made their premises unsafe and unusable" is unhelpful. *See Kevin Barry Fine Art Assocs. v. Sentinel Ins. Co., Ltd.*, 2021 WL 141180, at *5 (N.D. Cal. Jan. 13, 2021) (collecting cases finding the same). The *Studio 417* decision is also distinguishable because although it analyzed a similar policy provision, it did so under Missouri, as opposed to California, law.

11

and in the immediate area of the Parakeet Cafe locations." (*Id.* at ¶ 55.) However, the Closure Orders referenced in Plaintiffs' complaint make no mention of COVID-19 presence at Parakeet Café. Thus, the Court finds that Plaintiffs' allegations that the Closure Orders were prompted by the presence of COVID-19 on their property amount to nothing more than "bare assertions" and "mere conclusory statements," which are not entitled to the presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009); *See also Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1052 n. 1 (9th Cir. 2008) ("The same standard [for a motion to dismiss] applies to judgment on the pleadings.")

Moreover, the Court does not find that the presence of COVID-19 qualifies as physical damage to property because the virus harms human beings, not property. *Uncork & Create LLC v. Cincinnati Ins. Co.*, --- F. Supp. 3d ---, 2020 WL 6436948, at *5 (S.D.W. Va. Nov. 2, 2020) ("In short, the pandemic impacts human health and human behavior, not physical structures."); *Kevin Barry Fine Art Assocs. v. Sentinel Ins. Co., Ltd.*, 2021 WL 141180, at *6 (N.D. Cal. Jan. 13, 2021) (same). Consequently, the Court finds that allegations regarding the virus being present on and damaging Plaintiffs' property do not support a claim for insurance coverage. *See, e.g.*, *Pappy's Barber Shops, Inc. v. Farmers Group, Inc.*, --- F. Supp. 3d --- 2020 WL 5847570, at *1 (S.D. Ca. Oct. 1, 2020) (even assuming presence of virus at plaintiffs' business premises, business income losses were caused by precautionary measures taken by the state to prevent the spread of COVID-19 rather than by direct physical loss of or damage to property)

Lastly, to the extent that Plaintiff relies on *Total Intermodal Servs. Inc. v. Travelers Prop. Cas. Co. of Am.* for an expansive view of the phrase "direct physical loss of" property, the Court is unpersuaded. 2018 WL 3829767, at *1 (C.D. Cal. July 11, 2018). In *Total Intermodal*, the plaintiff filed an insurance claim for cargo that was inadvertently returned to China and later destroyed. *Id.* The court concluded that in the absence of physical damage, "the phrase 'loss of' includes the permanent dispossession of something."

*Id.* at *4. Here, Plaintiffs do not and cannot allege that they have been permanently dispossessed of property. Thus, the Court finds *Total Intermodal* is inapplicable to this case. Other courts have found the same. *See 10E, LLC*, 2020 WL 5359653, at *4–5; *Pappy's Barber Shops, Inc. v. Farmers Grp., Inc.*, --- F. Supp. 3d ---, 2020 WL 5500221, at *5 (S.D. Cal. Sept. 11, 2020). Accordingly, for the reasons stated, the Court finds that Plaintiffs have not alleged a covered loss under the Business Income provision.

### C. Civil Authority Provision

To trigger coverage under the civil authority provision, there must be an "action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss." (Doc. No. 8-3 at 49.) First, the Court finds that Plaintiffs have not plausibly alleged that the Closure Orders prohibited access to their property. In fact, the complaint indicates that the March 16 order permitted patrons to access the property to purchase food and beverages for pick-up and off-site consumption, and mandated businesses to ensure adequate social distancing in their premises. (Doc. No. 1-2 at ¶ 7.) Further, the Court notes that the civil authority coverage provision provides coverage only to the extent that access to Plaintiffs' physical premises is prohibited—not if Plaintiffs are merely prohibited from operating the on-site consumption aspect of their business. Simply stated, the Closure Orders alleged in the complaint prohibit the on-site dining operation of Plaintiffs' business; they do not prohibit physical access to Plaintiffs' premises.

Second, even assuming that the Closure Orders prohibited access to Plaintiffs' premises, the orders were not were not issued "due to direct physical loss of or damage to property, other than at the described premises." Just as the complaint does not plausibly allege a direct physical loss of or damage to Plaintiffs' property, it also does not plausibly allege a direct physical loss of or damage to property other than Plaintiffs' premises. *See supra* § III.B. The Court need not accept as true Plaintiffs' conclusory allegations that the

Closure Orders were issued due to COVID-19 "proliferating onto virtually every surface and object in, on, and around Wellness Eatery and its surrounding environs[.]" (Doc. No. 1-2 at ¶ 19.) Again, the text of the Closure Orders makes clear that they were issued as general precautionary measures "to slow the pace of community spread and avoid unnecessary strain on our medical system" (Doc. No. 8-3 at 289), to "take precautions to prevent the spread of COVID-19" (*id.* at 293), and "[t]o preserve the public health and safety, and to ensure the healthcare delivery system is capable of serving all, and prioritizing those at the highest risk and vulnerability" (*id.* at 298). Nowhere is the presence of COVID-19 in the surrounding areas of Wellness Eatery cited as the impetus for the Closure Orders. Accordingly, for the reasons stated, the Court finds that Plaintiffs have not alleged a covered loss under the civil authority provision.

### D. <u>Viability of Plaintiffs' Causes of Action</u>

While the Court is sympathetic to Plaintiffs' situation, it must find, as a matter of law, that their insurance claims are not covered by the Policy.[8] *See supra* § III.B, C. And as Plaintiffs' causes of action for breach of contract, breach of covenant of good faith and fair dealing, bad faith denial of insurance claim, unfair business practices, unjust enrichment, declaratory relief, and injunctive relief all rely upon the existence of coverage under the Policy, they will be dismissed.[9] *See, e.g.*, *Waller*, 11 Cal. 4th at 36 ("It is clear that if there is no *potential* for coverage and, hence, no duty to defend under the terms of the policy, there can be no action for breach of the implied covenant of good faith and fair

---

[8] Defendant also argues that the virus exclusion provision also precludes coverage in this case. However, because the Court finds that coverage is unavailable under the business income and civil authority provisions, the Court need not consider whether the virus exception applies.

[9] Plaintiffs' unjust enrichment claim fails for the additional reason that an action in quasi-contract does not lie "when an enforceable, binding agreement exists defining the rights of the parties." *See Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996).

dealing because the covenant is based on the contractual relationship between the insured and the insurer.")

As to the fraudulent misrepresentation claim, Plaintiffs allege that "Defendants affirmatively misrepresented that there was full coverage for business interruption whenever there was a business interruption caused by physical damage." (Doc. No. 1-2 at ¶ 95.) The Court sees no misrepresentation here because the text of the Policy makes plain that it does cover physical damage to the property; Plaintiffs' particular claim simply did not meet it. Moreover, Plaintiffs' allegations are insufficient to meet the heightened pleading standard for fraud claims. *See* Fed. R. Civ. P. 9(b); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) ("Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged.") (citation omitted).

As to the constructive fraud claim, Plaintiffs allege that "Defendants owe fiduciary and quasi-fiduciary duties to Plaintiffs, including duties of loyalty, due care, good faith, and fair dealing in connection with their actions under the Policy." (*Id.* at ¶ 103.) Other than a formulaic recitation of the elements, however, Plaintiffs offered no additional allegations or factual enhancements to explain this claim. In any event, Defendant complied with the Policy as a matter of law. Thus, Plaintiffs' constructive fraud claim also fails.

## IV. <u>CONCLUSION</u>

In light of the foregoing, the Court **GRANTS** Defendant's motion for judgment on the pleadings as to all causes of action in the complaint. (Doc. No. 8).

At the conclusion of their opposition, Plaintiffs noted that should the Court find in favor of Defendant, they request leave to amend the complaint, "given the fact that the law concerning business interruption coverage linked to the COVID-19 pandemic is very much in development." (Doc. No. 13 at 31.) The Court notes that the overwhelming majority of courts to have considered the issues raised in Plaintiffs' complaint "have concluded that

temporarily closing a business due to government closure orders during the pandemic does not constitute a direct loss of property under insurance policies with the same coverage provision." *Kevin Barry Fine Art Assocs.*, 2021 WL 141180, at *3 (collecting cases). Any amendment is therefore likely to be futile. In the interest of justice, however, and before allowing an amendment, Plaintiffs must file a motion for leave to amend with a redlined version of the proposed amended complaint attached. If the motion for leave to amend is not filed by February 12, 2021, Plaintiffs' causes of action will be dismissed without leave to amend, judgment will be entered in favor of Defendant, and this civil action will be closed.

**IT IS SO ORDERED**.

Dated: February 3, 2021

Hon. Anthony J. Battaglia
United States District Judge